UNITED STATED DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAFAYETTE DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA | CRIMINAL NO. 12-CR-00146 (10) |
| VERSUS | JUDGE FOOTE |
| ALEXANDER DERRICK REECE, ET AL | MAGISTRATE JUDGE HANNA |

BRIEF ON BEHALF OF BARRY L. DOMINGUE
ON THE ISSUES OF STANDING

Defendant, BARRY L. DOMINGUE ("Domingue"), through undersigned counsel, respectfully submits this brief on the issue of standing as instructed by the Court pursuant to the Order entered on August 7, 2013 (Rec. Doc. 625).[1]

**Buswell's Motion to Suppress Statements (Rec. Doc. 250)**

Domingue did not adopt this motion. There is no standing issue concerning Domingue with regard to this motion and further, the government has acknowledged that it does not intend to use the statements at issue in this motion.

**Buswell's Motion to Suppress Money Laundering Counts (Rec. Doc. 294)**

Domingue adopted this motion and the government concedes in its brief that Domingue has standing with regard to the issues raised in this motion.

---

[1] Briefs were previously submitted on the issue of this Court being divested of jurisdiction by operation of Domingue's interlocutory appeals. The Fifth Circuit has declined to exercise its authority under the collateral order doctrine and accept jurisdiction for those appeals. Although Domingue intends to seek writs of certiorari with the United States Supreme Court on the Congressional Review Act violations and misapplication of the Analogue Statute, it would appear that the divesting of jurisdiction that occurred as a result of the filing of the notices of appeal is no longer in effect.

**Buswell's Motion to Dismiss Count Two of the Superceding Indictment (Rec. Doc. 297)**

Domingue adopted this motion and the government concedes in its brief that Domingue has standing with regard to the issues raised in this motion.

**Reece's Motion to Suppress Evidence and Request for Franks Hearing (Rec. Doc. 321)**

Domingue adopted this motion. The government correctly concedes in its brief that Domingue had no ownership interest in the property or items seized from Reece. Further, it appears that Reece is no longer involved in this litigation and thus, the evidence is not relevant. Domingue reserves his right to object to the introduction of the evidence that is the subject of this motion in the event that the government attempts to use such evidence at the trial of this matter.

**Buswell's Motion to Suppress Search Warrants and Unlawfully Obtained Evidence (Rec. Doc. 322)**

Domingue adopted this motion. The government correctly concedes in its brief that Domingue had no ownership interest in the property or items that are the subject of this motion. However, in its opposition to Buswell's motion to suppress (Rec. Doc. 493), the government, without candor, represented to this Court that the warehouse located at "310 Pinehurst Street #4," was leased by Domingue. Not only is such a suggestion absurd in its premise, it exists as a knowing false statement to this Court.[2] Specifically, in footnote 4

---

[2] The government's statements to the Court on this particular issue would appear to evidence a violation of Rule 3.3 of the Louisiana Rules of Professional Conduct.

on page 2 of its brief, the government states:  "The defendant has not moved to suppress evidence seized at 310 Pinehurst Street #4 located in Lafayette, Louisiana, **which was leased to Barry Domingue**." At the time that the government made this misrepresentation, it was in possession of the lease agreement for the Curious Goods warehouse, which is attached hereto as "Exhibit 1" and which bears the government's Bates numbers 4501 to 4504.  As clearly shown at the top of the first page of the lease agreement, the warehouse was leased by Curious Goods, LLC; and as shown on the last page of the agreement, the document was signed by Richard Buswell on behalf of Curious Goods, the lessee. Specifically, the agreement is signed by Buswell in the signature blocks for "**LESSEE**" and "**GUARANTOR**." Domingue's signature appears on the agreement under the signature block for '**WITNESSES**." Although Domingue may have "witnessed" Buswell's signature on the agreement, it is not possible to have mistaken or construed such to provide that Domingue had "leased" the location as alleged by the government.

Also, attached hereto as "Exhibit 2" and bearing the government's Bates numbers 4505 to 4507 is the lease agreement for the warehouse units of Alpha Products, LLC located at 310 Pinehurst Street #4 and #5.  As clearly shown at the top of the first page of the lease agreement, the warehouse was leased by Alpha Products, LLC; and as shown on the last page of the agreement, the document was signed by Josh Espinoza on behalf of Alpha Products, LLC, the lessee. Specifically, the agreement is signed by Espinoza in the signature blocks for "**LESSEE**" and "**GUARANTOR**." Domingue's signature appears on

---

**Rule 3.3 CANDOR TOWARD THE TRIBUNAL**: (a) A lawyer shall not knowingly:  (1)make a false statement of fact or law to a tribunal or fail to correct a false statement of material fact or law previously made to the tribunal by the lawyer.

the agreement under the signature block for "**WITNESSES**." Again, although Domingue may have "witnessed" Espinoza's signature on the agreement, it is not possible for the government to have mistaken or construed such to provide that Domingue had "leased" 310 Pinehurst Street #4. A person does not become a party to a contract simply by witnessing the signatures of the contracting parties. The government had absolutely no basis to suggest to this Court that Domingue had leased any property at issue herein.

Domingue reserves his right to object to the introduction of the evidence that is the subject of this motion in the event that the government attempts to use such evidence at the trial of this matter.

## **CONCLUSION**

For all of the foregoing reasons, it is respectfully submitted that the Court should find that Domingue has standing with regard to Record Documents 294 and 297, that these motions should be granted, and that Domingue's right to object to the attempted introduction of any of the evidence at issue in any or all of the pending motions be reserved for trial.

Respectfully submitted,

September 3, 2013

*/s/ Barry L. Domingue*
Barry L. Domingue (21564)
122 Representative Row
Post Office Box 80112
Lafayette, LA 70598
Phone: (337) 781-7486
Fax: (866) 691-7507
Email:  barrydomingue@cox.net
Attorney for Barry L. Domingue

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that I electronically filed the foregoing with the Clerk of Court by using the CM/ECF System, which will send notice of electronic filing to counsel of record, on this 3rd day of September, 2013.

/s/ *Barry L. Domingue*
Barry L. Domingue (#21564)

UNITED STATED DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAFAYETTE DIVISION

| | |
|---|---|
| **UNITED STATES OF AMERICA** | **CRIMINAL NO. 12-CR-00146 (10)** |
| **VERSUS** | **JUDGE FOOTE** |
| **ALEXANDER DERRICK REECE, ET AL** | **MAGISTRATE JUDGE HANNA** |

_____

# EXHIBIT 1

**Curious Goods Lease Agreement**
**310 Pinehurst Street, #7**

# Lease Agreement

STATE OF LOUISIANA

PARISH OF LAFAYETTE

This lease agreement made and entered into this 22nd day of September by and between ALFRED B. LEONPACHER, a resident of the City of Lafayette, Parish of Lafayette, State of Louisiana hereinafter called "Lessor" and:

_Curious Goods, LLC_

Hereinafter referred to as "Lessee".

### WITNESSETH

That Lessor, In consideration of the rental hereinafter stated, and the agreement of Lessee hereinafter contained, does by these presents hereby lease, demise, and let unto Lessee the following described property to-wit:

One office-warehouse unit of 1250 square feet, more or less, in that certain building known as the Crown Center located at 310 Pinehurst Street, Unit # _7_ in the City of Lafayette, State of Louisiana

### 1. TERM

This lease is made, entered into and accepted for a term of _1_ year(s) commencing on the _1st_ day of _October, 2011_ and ending on the _30_ day of _September, 2012_. As part of the consideration for this lease, Lessee shall have and is hereby granted the option and privilege of renewing this lease for one period of _1 year_ upon the same terms and conditions, except that the rental shall be $675.00 per month. The said option must be exercised at least sixty (60) days prior to the end of the primary term of this lease and notice of intention to exercise said option shall be sent to Lessor herein by registered or certified letter in order for said option to be deemed exercised.

### 2. AMOUNT

This lease is made for and in consideration of the covenants herein contained and the annual rental of $8170.00 net; the said rental to be payable in monthly payments of $675.00 payable on the first day of each month in advance during the term of this lease. A SECURITY DEPOSIT of: $675.00 has been received in advance of execution of this lease. This security deposit shall be returned to the Lessee upon quitting premises and leaving leased premises in good repair.

### 3. TAXES

Any increase in property taxes shall be borne by Lessor

### 4. MAINTENANCE

Lessee shall, at its own cost and expense, keep the improvements in a constant ordinary state of repair ordinary wear and tear excepted and shall be responsible for the interior of the building, including plumbing, and electrical fixtures and painting of the walls, but repairs to the roof and structural part of the building shall be the obligation of the Lessor. IT IS EXPRESSLY UNDERSTOOD AND AGREED THAT THE USUAL AND NORMAL MAINTENANCE OF THE AIR-CONDITIONING AND HEATING UNIT AS WELL AS LIGHT BULBS SHALL BE PAID BY LESSEE. Lessor shall pay all major repairs in excess of $200.00 or the replacement of the entire air conditioning unit.

### 5. INSURANCE

Lessee shall maintain at all times during the term of this lease or any renewal thereof combined single limit public liability, bodily injury and property damage insurance in the sum of not less than $300,000 naming Lessor as an additional insured.

## 6. CASUALTY

In the event the leased premises are partially destroyed or totally destroyed or rendered wholly unfit for occupancy by fire, tornado, or other casualty; at either Lessor's of Lessee's option, this lease shall terminate and the rent shall be paid to the time of destruction or casualty. In the event of repair or construction following said damage or destruction, Lessee shall pay no rent during the period of time Lessee is unable to occupy the leased premises. In any event, the Lessor shall have the exclusive rights to the proceeds of any insurance policy covering such hazards for its use in construction or its compensation for said destruction.

## 7. INDEMNITY

Lessee covenants and agrees to indemnify and save Lessor harmless from any and all claims, demands, suits, actions, judgments and recoveries for or on-account of damage or personal injury (including death) to Lessee, its agents, servants, employees, customers, invitees or other party or parties on leased premises which may be caused by or due to the fault of the Lessee, its agents servants, employees, or representatives in the operation of its business.

## 8. ASSIGNMENT OR SUBLEASE

Lessee may not assign or sublease all or any portion of the leased premises.

## 9. EXPROPRIATION

If the leased premises, or any portion or part thereof, is taken by eminent domain or expropriation, this lease shall expire on the date when the leased premises shall be so taken as to that portion of the property taken, and the rent shall be apportioned as of that date.

## 10. IMPROVEMENTS BY LESSEE

Lessee shall have the right to make alterations, additions and improvements to the leased premises he shall deem necessary with the prior consent of the Lessor, provided, however, that any alteration, addition or improvement made by the lessee, shall at Lessor's option become the property of the Lessor upon the expiration or other sooner termination of this lease, provided further that the Lessor shall have the right to require that Lessee remove such improvements at Lessee's cost upon such termination of this lease.

## 11. RIGHT TO ACCESS

Lessor or its agent or representative shall have the right to enter upon the leased premises at all times in order to inspect the premises, to show to prospective purchasers or tenants or to make such repairs, alterations or improvements as Lessor may deem necessary or advisable.

## 12. DEFAULT

The failure to pay any monthly rental when due, or the failure to pay any air conditioning repair invoice or tax assessment after giving Lessee ten (10) days written notice of its failure to pay shall give Lessor the right and privilege at its election; either to declare this lease terminated and enter upon and take complete and peaceable possession of the leased premises or Lessor may demand payment from Lessee for the entire rental for the whole unexpired term of this lease. Lessee specifically waives all legal notice to vacate the premises. Should voluntary or involuntary bankruptcy proceedings be commenced by or against the Lessee, then Lessee shall be ipso facto in default in this lease, and Lessor may demand the rent for the whole unexpired term of this lease or terminate the lease at its option. If the Lessee shall be in default in the performance of any covenant or condition in this lease required to be performed by the Lessee, the Lessor may, after ten (10) days notice to Lessee, or without notice in the Lessor's opinion an emergency exists, perform such covenants or conditions for the account and at the expense of the Lessee, in which event, the Lessee shall reimburse Lessor for all sums paid to cure such default, together with interest at the rate of 10% per annum and reasonable attorney's fees. In order to collect such reimbursement, the Lessor shall have all the remedies available under this lease for a default in the payment of the rental.

## 13. ATTORNEY FEES

In the event it becomes necessary for the Lessor to employ an attorney at law to collect past due rentals or to enforce the provisions of this lease agreement, the Lessee agrees to pay

004502
004502

reasonable attorney's fees for the purpose of enforcing the provisions of this lease agreement, and a fee of not less than twenty-five percent (25%) of the total amount of past due rentals.

### 14. COMPLY WITH LAWS

Lessee shall properly execute and fulfill all the ordinances of the city or other governmental agencies applicable to said premises due to Lessee's use of said premises during the term of the lease, all at Lessee's expense.

### 15. RECLAMATION

At the end or other expiration of the terms of this lease, Lessee shall deliver up the leased premises in good order, ordinary wear and tear excepted. Any damage caused by the removal of Lessee's improvements allowed to be removed by the Lessor shall be repaired and paid for by Lessee.

### 16. WAIVER

No waiver by the Lessor of any default or breach of any term, covenant, condition, agreement, provision or stipulation herein contained shall be treated as a waiver of any subsequent default or breach of same or any other term, covenant, condition, agreement, provision or stipulation hereof.

### 17. NOTICES

All notices required to be given herein under shall be in writing and shall be sent by United States certified or registered mail, postage prepaid, addressed to Lessor:

Alfred B. Leonpacher
126 Acacia Drive
Lafayette LA 70508-4002

Any and all notices to be given to Lessee shall be done at the following address to-wit:

2009 N.W. Evangeline Thruway
Lafayette LA 70501
337-233-5007

### 18. SALE BY OWNER

The term "Lessor" as used in this lease means only the owner for the time being of the leased premises, so that in the event of any sale of the leased premises, the seller shall be and is hereby entirely relieved of all obligations and liability of the Lessor hereunder. Without further agreement between the parties or between either of the parties and any purchaser of the leased premises, such purchaser shall be deemed to have assumed all the obligations of the Lessor under this lease.

### 19. MISCELLANEOUS

The covenants and agreements contained herein shall inure to the benefit of parties hereto and their respective heirs, legal representatives and assigns. Overnight or continuous parking of Lessee's vehicles; cars, trucks or trailers, personally owned or used in the conduct of Lessee's business shall not be permitted outside of this rental unit in parking area. These parking spaces are for the use of customers of all units.

### 20. COMPLETE AGREEMENT

The lease contains the entire agreement between the parties and any amendment hereinafter made shall be ineffective to change or modify any agreement or covenant herein contained unless same be in writing and signed by the party against whom enforcement of the change or modification is sought.

## 21. GUARANTOR

AND TO THESE PRESENTS came and appeared:

_Richard Buswell_

of lawful age, who declared that he does guarantee the payments of all rentals provided for herein by Lessee and further guarantees the performance of all of the terms, conditions, and obligations of this lease to be performed by Lessee and that any notices, requests, or demands required or agreed or permitted to be given under this lease to said Guarantor shall be at the following address to-wit:

_2009 N.W. Evangeline Thruway_
_Lafayette, LA 70501_

IN WITNESS WHEREOF, the parties hereto have executed this agreement or lease on the day and date hereinabove first written in the presence of the undersigned competent witnesses.

LESSOR:                                    WITNESSES:

_[signature]_ A.B. Lyonpather              _[signature]_
                                           Robin Parker
LESSEE:                                    Robin Parker
_[signature]_
Richard Buswell                            _[signature]_
                                           Barry Domingue
GUARANTOR:
_[signature]_
Richard Buswell

UNITED STATED DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAFAYETTE DIVISION

| | |
|---|---|
| **UNITED STATES OF AMERICA** | **CRIMINAL NO. 12-CR-00146 (10)** |
| **VERSUS** | **JUDGE FOOTE** |
| **ALEXANDER DERRICK REECE, ET AL** | **MAGISTRATE JUDGE HANNA** |

_____

# EXHIBIT 2

Alpha Products Lease Agreement
310 Pinehurst Street, #4 and #5

# Lease Agreement

STATE OF LOUISIANA

PARISH OF LAFAYETTE

KNOW ALL MEN BY THESE PRESENTS THAT:

This lease agreement made and entered into this 5th day of October, 2011, by and between ALFRED B. LEONPACHER, a single man residing in the City of Lafayette, Parish of Lafayette, State of Louisiana hereinafter called "Lessor" and Alpha Products, LLC, hereinafter referred to as "Lessee".

## WITNESSETH

That Lessor, in consideration of the rental hereinafter stated, and the agreement of Lessee hereinafter contained, does by these presents hereby lease, demise, and let unto Lessee the following described property, to-wit:

One office-warehouse unit of 1250 square feet, more or less, in that certain building known as the Crown Center building located at 310 Pinehurst Street, Unit # 4, 5 in the City of Lafayette, State of Louisiana

### 1. TERM

This lease is made, entered into and accepted for a term of 1 year(s) commencing on the 1st day of November, 2011 and ending on the 31st of October, 2012. As part of the consideration for this lease, Lessee shall have and is hereby granted the option and privilege of renewing this lease for one period of 1 upon the same terms and conditions, except that the rental shall be $675.00 DOLLARS per month. The said option must be exercised at least sixty (60) days prior to the end of the primary term of this lease and notice of intention to exercise said option shall be sent to Lessor herein by registered or certified letter in order for said option to be deemed exercised.

### 2. AMOUNT

This lease is made for and in consideration of the covenants herein contained and the annual rental of $16,200.00 per annum net; the said rental to be payable in monthly payments of $1,350.00 payable on the first day of each month in advance during the term of this lease. A SECURITY DEPOSIT $1,350.00 shall be payable upon execution of this lease. This security deposit shall be returned to the Lessee upon quitting premises and leaving leased premises in good repair.

### 3. TAXES

Any increase in property taxes shall be borne by Lessor

### 4. MAINTENANCE

Lessee shall, at its own cost and expense, keep the improvements in a constant ordinary state of repair, ordinary wear and tear excepted and shall be responsible for the interior of the building, including plumbing, and electrical fixtures and painting of the walls, but the repairs to the roof and structural part of the building shall be the obligation of the Lessor. IT IS EXPRESSLY UNDERSTOOD AND AGREED THAT THE USUAL AND NORMAL MAINTENANCE OF THE AIR-CONDITIONING AND HEATING UNIT SHALL BE PAID BY LESSEE. All major repairs in excess of $200.00 or the replacement of the entire unit shall be paid by Lessor.

### 5. INSURANCE

Lessee shall maintain at all times during the term of this lease or any renewal thereof combined single limit public liability, bodily injury and property damage insurance in the sum of not less than $300,000 naming Lessor as an additional insured. Lessor will carry fire and extended coverage insurance and Lessee shall pay any increase of this insurance premium within fifteen (15) days of being furnished with the premium notice by Lessor. In the event Lessee vacates the building prior to the expiration of this lease, Lessee shall pay any increase in insurance premium as a result of the vacancy.

Page 3

collect past due rentals or to enforce the provisions of this lease agreement, the Lessee agrees to pay reasonable attorney's fees for the purpose of enforcing the provisions of this lease agreement, and a fee of not less than twenty-five percent (25%) of the total amount of past due rentals.

### 14. COMPLY WITH LAWS

Lessee shall properly execute and fulfill all the ordinances of the city or other governmental agencies applicable to said premises due to Lessee's use of said premises during the term of the lease, all at Lessee's expense.

### 15. RECLAMATION

At the end or other expiration of the terms of this lease, Lessee shall deliver up the leased premises in good order, ordinary wear and tear excepted. Any damage caused by the removal of Lessee's improvements allowed to be removed by the Lessor shall be repaired and paid for by Lessee.

### 16. WAIVER

No waiver by the Lessor of any default or breach of any term, covenant, condition, agreement, provision or stipulation herein contained shall be treated as a waiver of any subsequent default or breach of same or any other term, covenant, condition, agreement, provision or stipulation hereof.

### 17. NOTICES

All notices required to be given hereinunder shall be in writing and shall be sent by United States certified or registered mail, postage prepaid, addressed to Lessor:

Alfred B. Leonpacher
126 Acacia Drive
Lafayette LA. 70508-4002

to-wit: Any and all notices to be given to Lessee shall be done so at the following address

4400 Ambassador Caffery, Ste. 202
~~Lafayette LA~~ 70508

### 18. SALE BY OWNER

The term "Lessor" as used in this lease means only the owner for the time being of the leased premises, so that in the event of any sale of the leased premises, the seller shall be and is hereby entirely relieved of all obligations and liability of the Lessor hereunder. Without further agreement between the parties or between either of the parties and any purchaser of the leased premises, such purchaser shall be deemed to have assumed all the obligations of the Lessor under this lease.

### 19. MISCELLANEOUS

The covenants and agreements contained herein shall inure to the benefit of the parties hereto and their respective heirs, legal representatives and assignees.

### 20. COMPLETE AGREEMENT

The lease contains the entire agreement between the parties and any amendment hereinafter made shall be ineffective to change or modify any agreement or covenant herein contained unless same be in writing and signed by the party against whom enforcement of the change or modification is sought.

### 21. GUARANTOR

x Josh Espinoza    AND TO THESE PRESENTS came and appeared
_____ of lawful age, who declared that he does guarantee the

004506
004506

Page 4

payments of all rentals provided for herein by Lessee and further guarantees the performance of all of the terms, conditions, and obligations of this lease to be performed by Lessee and that any notices, requests, or demands required or agreed or permitted to be given under this lease to said Guarantor shall be at the following address to-wit:

X _4400 Ambassador Caffery Pky, Ste. 202_
_Lafayette, LA 70508_

IN WITNESS WHEREOF, the parties hereto have executed this agreement of lease on the day and date hereinabove first written in the presence of the undersigned competent witnesses.

WITNESSES:                              LESSOR:
                                        _[signature]_
                                        A. B. Leonpacher

                                        LESSEE:
                                    X   BY: _[signature]_

                                        GUARANTOR:
                                    X   _[signature]_